IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UBIFUNSTUDIO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No.: 1:25-cv-03543 <br><br> District Judge Franklin U. Valderrama <br><br> Magistrate Judge Jeannice W. Appenteng |

**PLAINTIFF'S MEMORANDUM OF LAW ESTABLISHING THAT JOINDER IS PROPER**

Pursuant to the Court's April 4, 2025 Order, Plaintiff Ubifunstudio Co., Ltd. ("UbiFun" or "Plaintiff") submits this Memorandum of Law Establishing that Joinder is Proper under Fed. R. Civ. P. 20(a)(2). Dkt. 9.

**I.      INTRODUCTION**

While Ubifun has named sixteen Defendants in this lawsuit, the Defendants have admitted they operate as a collective "community" that focus on creating infringing versions of UbiFun's "Dekaron" video game. As set forth below and in the supporting evidence, Defendants have threatened to "fight" and be a "nightmare" in Plaintiff's life on behalf of "all." While the individual Defendants have offered slightly different infringing games, the evidence gathered so far suggests each Defendant's unauthorized game derives from the same original acts of piracy and infringement by the original ringleader, namely Defendant Tempest. For these reasons, the interests of justice plainly favor joining these Defendants in this lawsuit.

1

**II.     BACKGROUND**

UbiFun is a leading international developer and publisher of video games. For over a decade, UbiFun has operated an online platform housing various types of personal computer based games, including board games and online RPGs (Role-Playing Games, in which players assume the roles of characters in a fictional setting). UbiFun directly conducts the development and service operations of these games, and is developing a mobile game platform along with additional genres of mobile games. Dkt. 1, ¶ 13-16.

Plaintiff initiated the present action against sixteen anonymous online defendants to protect Plaintiff's valuable copyrights and trademarks for the highly successful UbiFun "Dekaron" video game. Dkt. 1. Defendants created, published, and distributed infringing and counterfeit versions of the "Dekaron" video game using Plaintiff's federally registered "Dekaron" copyrights and trademarks (the "UbiFun Works") to sell, offer for sale, distribute, and advertise infringing products. Dkt. 1, 2.

In its correspondence with UbiFun, Defendant Dekaron Tempest ("Tempest") has admitted to being a ringleader of a "community" of Defendants that focus on creating infringing versions of UbiFun's "Dekaron" video game. Declaration of Jiwook Shin ¶¶ 7-8, 19, Exhibit 5 ("Shin Decl."). In and around early 2024, Tempest accessed and took possession of the files for the game. *Id*. Tempest claims it has the "monopoly" of the original game's server files, and works together with Rising to leak these files to the other Defendants. *Id.* at ¶¶ 8, 19, Exhibit 5. Tempest has threatened to "fight" and be a "nightmare" in Plaintiff's life on behalf of "all of" the Defendants. *Id.* Defendant Dekaron Rising ("Rising") admitted that Defendants are an "enemy" to Plaintiff. *Id.* at ¶¶ 7, 19, Exhibit 5. Defendant Titan's Wrath admitted that it was working together with another Defendant who was "making a lot of money with that private Dekaron server." *Id.* at

¶¶ 12, 19, Exhibit 5. The rest of the Defendants followed with their own infringing games which are believed to be derived from the same unauthorized sources. Screenshots of these games reveal identical images among the games which are derived from a single common source—Tempest's leaked files. *Id.* at ¶¶ 8, 19, Exhibit 5. The bulk of the evidence, based on UbiFun's investigation to date, suggests the sixteen Defendants are related. Accordingly, joinder of the Defendants is necessary to shut down this operation led by Defendants in the "same transaction or occurrence," under Rule 20, aimed at harassing UbiFun in response to its persistent efforts to remove Defendants' infringing material.

On April 4, 2025, this Court entered a minute order directing Plaintiff to file "a supplemental memorandum addressing the propriety of joinder" under Fed. R. Civ. P 20(a)(2), *Estee Lauder Cosms. Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 334 F.R.D. 182, 186 (N.D. Ill. 2020), and *Andrew Blair Bailie v. Partnerships and Unincorporated Associations Identified on Schedule "A,"* 24−cv−02150 Dkt. 28 (Apr. 24, 2024). Dkt. 9.

### III. ANALYSIS

As set forth below, all allegations revolve around Tempest and Rising's dissemination of the same infringing "Dekaron" software to the other Defendants. Plaintiff merely seeks to join the actor(s) responsible. Further, as shown in the comparison chart, there are at least seven Defendants with overlapping identical images from their infringing games, strongly suggesting that Defendants worked together and copied their game from a single common source—Tempest's leaked server files. Shin Decl., ¶¶ 4-5, Exhibit 1. Notably, of the sample evidence UbiFun collected, Tempest shares identical images with three other Defendants. *Id.*

### A. This Court has the Power to Permit Joinder Under Fed. R. Civ. P. 20(a)(2)

Pursuant to the Federal Rules of Civil Procedure, multiple defendants may be "joined in one action" if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, **occurrence**, or series of transactions or **occurrences**; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).

Under Fed. R. Civ. P. 20(a), the Supreme Court has stated in regards to permissive joinder that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Further, the Seventh Circuit has instructed that the purpose of a liberal Rule 20(a) joinder requirement "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

"In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Services, Inc.*, 2011 WL 2837435 at *3 (ND. Ill. July 18, 2011) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154,159 (S.D.N.Y. 2009). The Court should "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's claim only needs to be "plausible"—"'it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

As set forth below, "the two requirements of permissive joinder under Rule 20(a)(2)" are

satisfied in this case. *Id*.

      **B.**      **Plaintiff's Well-Pleaded Allegations Establish Joinder is Proper**

For reasons provided below, joinder of the storefronts in Amended Schedule A is proper under Rule 20.

      **1.**      **Defendants Have Engaged in the Same Transaction, Occurrence, or Series of Transactions or Occurrences Under Rule 20**

Regarding the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied the "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] ... standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *In re EMC Corp.*, 677 F.3d at 1358. The Seventh Circuit "has not directly addressed the meaning of 'same transaction or occurrence'" in Rule 20. *Papachristos v. Hilton Mgmt., LLC*, No. 14 CV 5501, 2015 U.S. Dist. LEXIS 28708, at *7 (N.D. Ill. Mar. 10, 2015). As a result, "the Court has 'considerable discretion' and 'flexibility' in determining whether the plaintiff has plausibly alleged such a relationship." *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 513 (N.D. Ill. 2020) (quoting *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018)); *Roadget Bus. Pte. Ltd. v. Individuals, et al*, No. 23 C 17036, 2024 WL 1858592, at *6 (N.D. Ill. Apr. 29, 2024) (quoting *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018)) ("When applying Rule 20, '[a] district judge necessarily has considerable discretion.'"); *Estee Lauder Cosmetics Ltd. v. Schedule* A, 334 F.R.D. 182, 185 (N.D. Ill. 2020) (declining to permit joinder while recognizing discretion under Rule 20).

Second, in analyzing whether parties are properly joined under Rule 20, the term "transaction" is a "word of flexible meaning" that "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical

relationship. *Moore v. N.Y. Exch.*, 270 U.S. 593, 610 (1926); see also Burlington N.R. Co. v. Strong, 907 F.2d 707, 711 (7th Cir. 1990) (applying the "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a)). Thus, the Court maintains flexibility and "considerable discretion" in determining whether Plaintiff has plausibly alleged such a relationship. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

In assessing whether Plaintiff's claims arise from the same transaction or occurrence, the Northern District of Illinois has considered factors including whether the conduct at issue occurred during the same general time period, involved the same people, and most importantly, involved similar conduct. *Lozada v. City of Chicago*, 2010 WL 3487952 at *2 (N.D. Ill. Aug. 30, 2010).

Finally, "[a]bsolute identity" of "all [the] events is unnecessary." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). Other courts have used the "logical relationship test" to interpret the "same transaction or occurrence" standard in Rule 20(a). *Id.* "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.* at 1332-1333. Rule 20 also does not define "occurrence," and courts so far have not defined "occurrence" apart from the meaning of "transaction." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). However, "[c]anons of construction ordinarily suggest that terms connected by a disjunctive"—as are "transactions or occurrences" in Rule 20—"be given separate meanings," and the dictionary definitions show that "occurrence" is much broader than "transaction." *Id.* Instead, an "'occurrence' is defined as something that simply 'happens' or 'appears,'" and "[u]nlike a 'transaction,' an 'occurrence' is not necessarily the product of joint or coordinated action.'" *Id.*

In the Seventh Circuit, for example, in *Khara Inc., et al v. The Neman Bros. & Assocs. v. P'ships et al.*, the Court found joinder proper where the defendants offered a substantially identical

6

accused product and same "same exact (fake) brand name." 1:23−cv−01230, Dkt. 24 (March 15, 2023) (Chang, E.).1 Similarly, *Neman Bros. & Assocs. v. P'ships* permitted joinder based on defendants using "the same third-party marketplace platforms" with "listings feature[ing] similar, and in some cases identical, product photos." 2024 U.S. Dist. LEXIS 223383, at *10-11 (N.D. Ill. Dec. 10, 2024) (Tharp, J.).

For the reasons provided below, joinder of the storefronts in Schedule A is proper under Rule 20(a). Plaintiff's well-pleaded allegations establish that Defendants are operating in the same transaction, occurrence, or series of occurrences.

First, Defendant Tempest admits that it, along with Defendant Rising, was responsible for leaking Plaintiff's game to the other Defendants in-suit. Plaintiff diligently sends takedown notices to every single infringing site it comes across, including defendants in this action. Shin Decl., ¶ 6. On November 23, 2024, Plaintiff sent a takedown notice to Tempest. On February 25, 2025, Plaintiff received a response from the operator of Tempest, Zarashi, which revealed that Defendants are working in concert together:



*Id.* at ¶¶ 8, 19, Exhibit 5.

Tempest threatened that he would "be a nightmare in [Plaintiff's] life." Next, he stated "only me and Nitex (Rising) have the monopoly of the real A40 server files." *Id.* (Rising also happens to be the largest server.) Tempest went on to threaten that if Plaintiff "start[s] a war against [him, he] will leak the server, database, the open source scriptprocess and the updated tools in all the community forums…" implying that Tempest alone exclusively held the latest versions of Plaintiff's game. Accordingly, Tempest, by stating he had a "monopoly" of all the files, and planned to leak all the materials to forums, illustrates that Defendants' infringing activity arises from the "same transaction or occurrence"—Tempest appears to be the ringleader and is leaking the materials to the other Defendants, such as Rising, who are using the leaked files to create their infringing games. This email suggests coordinated communication among the Defendants over a private server, forming an organized group to intentionally violate Plaintiff's copyrights. Thus, the infringing conduct is occurring "involv[ing] the same people, and…similar conduct." *Lozada*, 2010 WL 3487952 at *2 (N.D. Ill. Aug. 30, 2010).

On March 2, 2025, less than a week after sending that email, Tempest posted that a new infringing Dekaron Tempest server was now online. Shin Decl., ¶¶ 9, 19, Exhibit 5. The next day, on March 3, 2025, UbiFun asked Tempest (Zarashi) if UbiFun could have a conversation together with Tempest and Rising. In his response, Tempest said "when you see any 'exclusive' content around the servers keep in mind that I did it" and "Im the one that release all updates first than your Ubifun." These responses further suggest that Tempest is actively working to spread Dekaron's materials online. *Id.* at ¶¶ 10, 19, Exhibit 5. A few days later, on March 6, 2025, the server operator behind Defendant Dekaron Talion ("Talion") then posted that it was shutting down its server and selling the server files. *Id.* at ¶¶ 11, 19, Exhibit 5. The timing of Talion selling its server files, shows the transaction "occurred during the same general time period, involved the

8

same people, and most importantly, involved similar conduct. *Lozada*, 2010 WL 3487952 at *2 (N.D. Ill. Aug. 30, 2010).

Second, other Defendants have explicitly stated that they have coordinated their efforts. A month later, on April 15, 2025, another Defendant, Titan's Wrath, told UbiFun that he "know[s] someone in Korea who has a private server and is making a lot of money with that private Dekaron server. I was the developer but he stole my files." He elaborated that this person "has sent [Titan's Wrath] payments through PayPal. He stole [Titan's Wrath's] files and promised to pay [Titan's Wrath] for being his developer and never paid." This message further illustrates that Defendants are working together to create infringing copies of UbiFun's Dekaron game. Shin Decl., ¶¶ 12, 19, Exhibit 5.

Rising also suggested that Defendants were working together as a "community." Shin Decl., ¶¶ 7, 19, Exhibit 5. Rising's operator, Nitex, sent a DM (digital message) over Discord to Plaintiff in response to its cease and desist, suggesting a partnership with Plaintiff instead of taking down its infringing game. Rising also admitted that Defendants were working in concert together—and mentioned that the "community contributes out of shared love for the game." Further, Rising said "[w]e'd like to see if you'd be open to working together rather than see us as enemy," and "[w]e only want to help make the game more fun for everyone." The threatening use of the plural "we" by Rising suggests that Defendants are working together:



Third, there are numerous websites that are currently actively promoting illegal private servers that infringe Plaintiff's Copyright Registrations. Shin Decl., ¶ 13. For example, the website https://www.xtremetop100.com/dekaron has a list of at least 250 games specifically infringing Plaintiff's "Dekaron" game—and all of them have Dekaron in their name. *See Khara Inc.*, 1:23−cv−01230, Dkt. 24 (March 15, 2023) (Chang, E.).1 (finding joinder proper where the defendants offered a substantially identical accused product and "same exact (fake) brand name." The existence of a website devoted to listing hundreds of games infringing a single video game illustrates an active effort to indeed "be a nightmare" in UbiFun's life, and is likely not led by a single actor alone, but by multiple Defendants working together in the "same transaction or occurrence," likely with Tempest as their leader.

Further, this is not the only website promoting infringing versions of Plaintiff's Dekaron game. Plaintiff has uncovered at least three more websites, and it is possible that there are still more that Plaintiff has not yet identified. Shin Decl., ¶¶ 13-14, Exhibit 2. Promotional posts for Dekaron private servers that contain infringing versions of Plaintiff's Dekaron game appear frequently on these websites, and rankings for these websites are regularly updated. *Id.* Further, new games and servers that were not previously visible continue to be added. *Id.*

Finally, there are only sixteen defendants in-suit, compared to the typical "dozens or [even] hundreds" of defendants in other such suits that could potentially "undermine[] judicial economy," especially when figuring out damages. *Estee Lauder Cosmetics Ltd. v. Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020). *See also Wang v. The Partnerships And Unincorporated Associations Identified On Schedule A*, No. 1:24-cv-07631, (N.D. Ill., Oct. 11, 2024) (declining joinder for 68 defendants); *see also E-Link Plastic & Metal Industrial Co., Ltd.*, No. 1:23-cv-16802, (N.D. Ill., Mar. 18, 2024) (declining joinder for 295 defendants). Here, there are only sixteen defendants at issue, and there is evidence that defendants are working together, led by a single ringleader. This Court has previously found that joining 50 defendants was proper. *See Intersport Corp. d/b/a Wham-O v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 1:24-cv-06580, (N.D. Ill., July 31, 2024) (finding that defendants won't be prejudiced by permitting joinder).

### 2. Defendants Share Common Questions of Law or Fact Under Rule 20(a)(2)(B)

Plaintiff's allegations also satisfy Fed. R. Civ. P. 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." For example, in *Khara Inc., et al v. The Neman Bros. & Assocs. v. P'ships et al.*, the Court found joinder proper where the defendants offered a substantially identical accused product and "same

11

exact (fake) brand name." 1:23−cv−01230, Dkt. 24 (March 15, 2023) (Chang, E.).[1] Similarly, *Neman Bros. & Assocs. v. P'ships* permitted joinder based on defendants using "the same third-party marketplace platforms" with "listings feature[ing] similar, and in some cases identical, product photos." 2024 U.S. Dist. LEXIS 223383, at *10-11 (N.D. Ill. Dec. 10, 2024) (Tharp, J.). In the present case, there are common questions of law and fact. *See, e.g.*, *First Time Videos*, 276 F.R.D. at 251–52.

First, all storefronts have been accused of the same illegal act of selling the same counterfeit "Dekaron" video game. Each Defendant sells products bearing, and/or using, counterfeit and/or infringing versions of Plaintiff's trademarks or copyrights.

Second, thirteen out of sixteen Defendants all have "Dekaron" in their name—just like Plaintiff. They all feature the "same exact (fake) brand name[s]."

Third, many of the Defendant games (at least seven) have overlapping "identical, product photos"—even the games that do not have "Dekaron" in their names. By examining the comparison screenshots in Exhibit 1, the Court can recognize the infringing games encompass identical regional structures, characters, and items such as mailboxes. Shin Decl., ¶¶ 4-5, Exhibit 1. Further, these screenshots reveal that it is very likely that these Defendants received these images from Tempest. Of the handful of images that UbiFun identified, Tempest is the Defendant that has the most identical images to other Defendants, including Titan's Wrath, Axion 3 Dekaron, and 2Moons A9 7 Class. On information and belief, these commonalities strongly suggest the infringing products derive from a common source if not potential coordination among multiple storefronts. *Id.*

---

[1] Copies of unpublished cas(es) cited in the corresponding memorandum are submitted with this brief.

There are common questions of law and fact, as to all Defendants, which as established above, are related to each other and have been accused of the same illegal act—selling infringing versions of Plaintiff's Dekaron game. The messages from Defendants Tempest and Rising strongly suggest coordination amongst them, and that the infringing products likely derive from a common source. Defendants are acting in concert and engaging in a single active effort to infringe UbiFun's Dekaron work. There is a single unified server with UbiFun's source code, which is not public. Tempest (Zarashi), possibly along with Rising (Nitex), are likely responsible and leading the infringing activity among defendants, and leaking UbiFun's source code to the rest of the Defendants. Shin Decl., ¶ 17. There is more evidence pointing toward the fact that the defendants are related, as opposed to not related, to each other. Accordingly, the relevant infringement evidence is subject to common questions of law and fact.

Ultimately, there is ample evidence that Defendants worked together to promote the same infringing game, Dekaron, illustrating a "logical relationship" supporting joinder. *See Bose Corp*, 334 F.R.D. 511, 513-514 ("logical relationships…must be present among the claims and parties").

### C.  Joinder is Consistent with Convenience and Judicial Economy

The requirements for joinder are liberally construed for "entertaining the broadest possible scope of action consistent with fairness to the parties [such that] joinder of claims, parties and remedies is strongly encouraged." *Papachristos*, 2015 U.S. Dist. LEXIS 28708 at *1 (N.D. Ill. Mar. 10, 2015) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, (1966)). Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

In particular, Plaintiff (as well as other brand owners) would be prejudiced by having to file individual causes of action against each individual defendant who may have registered multiple

13

storefronts under different names. In other words, refusing joinder "ignores the form of harm" Plaintiff faces. *Bose Corp.*, 334 F.R.D. at 517 ("[s]eeking relief against each member of the swarm one by one defies common sense, because it is the swarm—the fact that all Defendants are attacking at once—that is the defining aspect of the harm"). Further, Defendants who operate multiple storefronts would be required to address and/or potentially appear in multiple effectively identical, concurrent lawsuits, if filed separately. The undersigned has frequently encountered situations where groups of seemingly unrelated storefronts (sometimes numbering a dozen or more) are later identified as commonly owned and efficiently addressed by defendant's counsel as a group.

Finally, the resources of the Court will be substantially taxed if Plaintiff's claims against Defendants are severed into multiple separate lawsuits having substantially identical pleadings. Compare assigning a single case, mailing a single trademark report and holding a single hearing to doing so dozens of times spread across dozens of individual cases, particularly when defendants rarely appear.

As there are multiple emails indicating that there are common defendants working together, and the infringing Dekaron games all appear on multiple websites that list hundreds of infringing games, large-scale prosecution of multiple private server operators would be more effective to demonstrate the seriousness of Defendants' copyright violations, as opposed to dealing with individual private servers. This would not only help Plaintiff but also protect other legitimate service providers in similar situations.

All told, joinder in cases like the present case facilities an effective mechanism for stopping and deterring online counterfeiting. *See e.g.*, *Shambour v. Carver County*, 2014 U.S. Dist. LEXIS 110267, at *17 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the

14

alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping [Plaintiff's] claims together is not only permissible but preferable.").

### D. Joinder is not Inconsistent with Fairness

Finally, joinder would not cause undue prejudice to Defendants. As courts in this District have observed in similar cases, "[p]robably none of the Defendants will ever make an appearance" *See, e.g.*, *Bose Corp.*, 334 F.R.D. Regardless of whether they appear, each Defendant will be fairly appraised of the pendency of this lawsuit, and each will be provided a full and fair opportunity to appear, answer, and present any objections or defenses should they choose to do so, including in relation to joinder. *PINK FLOYD*, 2021 U.S. Dist. LEXIS 254394, at *2 (noting "no Defendants are prejudiced by permitting joinder at this juncture").

Promotional or gameplay videos for these private servers are continuously being uploaded to platforms like YouTube, Facebook, Facebook Communities, and Vimeo. Although Plaintiff has been diligently reporting and requesting takedowns of infringing videos and posts, these posts continue to persistently appear. Attached as Exhibits 3 and 4 are lists of the current list of social network takedown requests in progress. Shin Decl., ¶¶ 15-16, Exhibits 3 and 4.

Unfortunately, the ongoing creation and existence of these private servers has had a serious impact on Plaintiff's sale of the Dekaron game, including a loss of trust, declining metrics of users playing Plaintiff's game, and reduced revenue. Shin Decl., ¶ 18. Private servers are actively promoting themselves to attract users and generate profit through donations and other means. Thus, users of the original service are moving to private servers that are easier to access and play.

### IV. Conclusion

For all the foregoing reasons, Plaintiff respectfully requests an order granting Plaintiff's request for joinder as to all defendants.

| | |
|---|---|
| DATED: April 17, 2025 | Respectfully submitted,<br><br>**NIXON PEABODY LLP**<br><br>*/s/ Erica J. Van Loon*<br>Erica J. Van Loon (CA Bar No. 227712)<br>300 S. Grand Avenue, Suite 4100<br>Los Angeles, CA 90071-3151<br>evanloon@nixonpeabody.com<br>T: +1 213.629.6031<br><br>Matthew A. Werber (IL Bar No. 6287658)<br>70 W. Madison St., Suite 5200<br>Chicago, IL 60602<br>mwerber@nixonpeabody.com<br>T: +1 (312) 977-4400<br><br>Peter Krusiewicz (IL Bar No. 6342444)<br>70 W. Madison, Suite 5200<br>Chicago, IL 60602<br>pkrusiewicz@nixonpeabody.com<br>T: +1 312.977.4473<br><br>***ATTORNEYS FOR PLAINTIFF*** |

**CERTIFICATE OF SERVICE**

    I, the undersigned attorney, certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on April 17, 2025.

                                                  */s/ Erica J. Van Loon*
                                                   Erica J. Van Loon